UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| BETTY MARAJ, Administratrix of the Estate of Darryl Leslie, | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 10-12251-JLT |
| | * | |
| COMMONWEALTH OF MASSACHUSETTS; | * | |
| SUFFOLK COUNTY SHERIFF'S DEPARTMENT; | * | |
| ANDREA J. CABRAL, SUFFOLK COUNTY | * | |
| SHERIFF; MELVIN REED; DANIEL BROCK; | * | |
| MICHAEL GRIFFIN; DANA JOHNSON; JAMES | * | |
| GLAVIN; KEITH STORLAZZI; JOSEPH | * | |
| MUNGER; THOMAS FLYNN; JAMES | * | |
| COPPINGER; EDWARD SCIARATTA; | * | |
| MICHAEL CARBONNEAU; | * | |
| BARBARA JOCELYN; and | * | |
| PRISON HEALTH SERVICES, INC., | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM

December 13, 2011

TAURO, J.

I.    Introduction

This action stems from a claim brought by Plaintiff Betty Maraj, the Administratrix of the

Estate of Darryl Leslie, against the Commonwealth of Massachusetts, the Suffolk County

Sheriff's Department, Suffolk County Sheriff Andrea J. Cabral, and a number of individual

corrections officers employed by the Suffolk County Sheriff's Department, regarding alleged

violations of Plaintiff's constitutional rights as well as violations of state statutory and common

law.[1]  At issue here is Defendants' Motion to Dismiss [#21].  For the following reasons,

---

[1] Plaintiff also brought several claims against Defendants Prison Health Services, Inc. and Barbara Jocelyn.  By an order dated November 3, 2011, These Defendants' Motion for Referral

Defendants' Motions to Dismiss is ALLOWED IN PART and DENIED IN PART.

II.       Background

          A.       Factual Background[2]

          Plaintiff is the mother of a deceased inmate, Darryl Leslie, and has brought suit as

administratrix of his estate.[3]   Darryl Leslie ("Decedent") was an inmate at the South Bay House of

Correction until his death on December 31, 2007.[4]   The events that preceded his death began on

the evening of December 31, 2007, when Nurse Barbara Jocelyn discovered a hand written note,

placed in the inmate "Sick Call Box" of the 3-2 unit, warning that a female corrections officer was

in danger of being raped by one of the inmates.[5]   Nurse Jocelyn turned the note over to the 3-2

unit supervisor, Sergeant Jeffrey Fiorentino.[6]   The inmate making the threatening remarks was

identified as Decedent.[7]

          Sergeant Fiorentino notified the building 3 supervisor, Lieutenant Jason McGrane, who,

along with shift commander Captain Michael Powers, made the decision to move Decedent into

---

to a Medical Malpractice Tribunal [#27] was ALLOWED.

          [2] Because the issues analyzed here arise in the context of a Motion to Dismiss, this court presents the facts as they are related in Plaintiff's complaint, see Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008), and construes those facts in the light most favorable to Plaintiff, see Pettengill v. Curtis, 584 F. Supp. 2d 348, 362 (D. Mass. 2008) (quoting Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 96 (1st Cir. 2007)).

          [3] Am. Compl. ¶ 5 [#4].

          [4] Am. Compl. ¶ 1 [#4].

          [5] Am. Compl. ¶ 22-23 [#4]..

          [6] Am. Compl. ¶ 25-26 [#4].

          [7] Am. Compl. ¶ 28 [#4].

segregation pending an investigation.[8]  Lieutenant McGrane notified the Sheriff Emergency

Response Team ("S.E.R.T."), supervised by Lieutenant Melvin Reed ("Defendant Reed"), that

Decedent was to be moved to segregation.[9]  Defendants Brock, Griffin, Johnson, and Glavin

responded to the call and began the transfer.[10]

Decedent was restrained with handcuffs and escorted from his cell in the 3-2 unit down

the hall, across the yard, toward building 1, at which time Decedent is alleged to have begun

resisting.[11]  Defendant Brock then "double locked" Decedent's handcuffs and put him into an

"escort hold."[12]  Defendants Storlazzi and Munger met Defendants Griffin and Brock at the

entrance to building 1 to assist in the transfer.[13]  Defendant Storlazzi observed Decedent yelling at

the officers and resisting the escort hold.[14]  At approximately 9:13 p.m., Defendants Storlazzi,

Munger, Griffin, and Brock met Defendant Reed, the S.E.R.T. supervisor, at the elevator in

building 1.  There, Defendant Reed accompanied the escort on the elevator to the fourth floor 1-

---

[8] Am. Compl. ¶ 29-31 [#4].

[9] Am. Compl. ¶ 32 [#4].

[10] Am. Compl. ¶ 33 [#4].

[11] Am. Compl. ¶ 34-35 [#4].  Plaintiff states in FN 1 to paragraph 35 that the allegation of resistence was made in the Suffolk County Department of Correction's Official Reports, but that Plaintiff does not concede such fact.

[12] Am. Compl. ¶ 36 [#4].

[13] Am. Compl. ¶ 38 [#4].  Defendants Johnson and Glavin are no longer mentioned as participating in the escort.

[14] Am. Compl. ¶ 39 [#4].

4-2 segregation unit.[15]  It is alleged that while in the elevator, Decedent continued to resist.[16]

Defendant Reed then ordered other S.E.R.T. officers – Defendants Flynn, James, Coppinger, Sciaratta, and Carbonneau – to meet the escort on the fourth floor to provide additional assistance.[17]  Defendant Reed also ordered the escort team to place Decedent in emergency response belts ("ERBs") upon exiting the elevator.[18]  When the elevator doors opened, Decedent was taken to the ground, his inmate jumpsuit was removed, and the ERBs were applied.[19]  Under the supervision of Defendant Reed, Defendants Storlazzi and Brock applied the top belt and Defendants Storlazzi and Sciaratta then applied the lower belt.[20]  While the belts were being secured, Defendant Carbonneau applied direct pressure to Decedent's shoulder area and used knee and palm strikes to Decedent's torso to subdue him when he allegedly continued to resist.[21]

While applying the upper belt around Decedent's torso, Defendant Brock heard Decedent state that he could not breathe.[22]  That Decedent made this statement was corroborated by several inmates and Officers Coackley, Dion, Salvatti, and Melchin, who are not party to this litigation.[23]

---

[15] Am. Compl. ¶ 40-41 [#4].

[16] Am. Compl. ¶ 42 [#4].

[17] Am. Compl. ¶ 43 [#4].

[18] Am. Compl. ¶ 44 [#4].

[19] Am. Compl. ¶ 45-46 [#4].

[20] Am. Compl. ¶ 47-48 [#4].

[21] Am. Compl. ¶ 49-50 [#4].

[22] Am. Compl. ¶ 51 [#4].

[23] Id.

The ERBs were secured at 9:22 p.m., and Defendants Brock, Storlazzi, Flynn, and Carbonneau carried Decedent into the 1-4-2 unit.[24]  Officer Storlazzi then stated that he could hear and feel the upper torso belt loosening, at which point Defendants put Decedent back on the ground to tighten the top belt to prevent it from sliding.[25]  Video taken by Defendant Munger, pursuant to Defendant Reed's order and facility policy, showed that Decedent was not combative, his head was limp, and he was unresponsive and unconscious while the belt was being readjusted and tightened.[26]

The belt was adjusted and tightened by 9:22:42 p.m., and the officers proceeded to cell #10 with Decedent.[27]  At 9:22:58 p.m., before arriving at the new cell, Defendant Reed requested medical attention for Decedent.[28]  Upon arriving at the new cell at 9:23:30 p.m., Defendants placed Decedent on the floor of the cell, at which time Decedent was unresponsive to any questions or commands.[29]  Defendant Reed then secured Decedent in his cell and left him on the floor in the restraints.[30]  Defendant Reed made a follow-up call for medical assistance at 9:24:28 p.m.[31]

Nurse Jocelyn arrived at Decedent's cell at 9:25:50, and the door to the cell was opened at

---

[24] Am. Compl. ¶ 51 [#4].

[25] Am. Compl. ¶ 54 [#4].

[26] Am. Compl. ¶ 55-56 [#4].

[27] Am. Compl. ¶ 57 [#4].

[28] Am. Compl. ¶ 62 [#4].

[29] Am. Compl. ¶ 58-59 [#4].

[30] Am. Compl. ¶ 61 [#4].

[31] Am. Compl. ¶ 62 [#4].

9:26:35 so that she could conduct a medical evaluation.[32]  Nurse Jocelyn could not make verbal contact with the Decedent and could not find his pulse.[33]  At 9:28:20 p.m., Nurse Jocelyn told the Defendants present that it was medically necessary to remove the ERBs, which they did at 9:29:00 p.m.[34]  Nurse Jocelyn and Defendant Storlazzi again checked for a pulse but could not find one.[35]  Nurse Jocelyn attempted other techniques to revive Decedent but was unsuccessful.[36]  At 9:31:38 p.m., Defendants initiated CPR and applied a defibrillator machine to Decedent until Boston Fire and EMS relieved them at 9:41p.m. and 9:42 p.m. respectively.[37]  Decedent was eventually transferred to Boston Medical Center at 10:15 p.m., where he was pronounced dead at 10:24 p.m.[38]

While the autopsy conducted by the Office of the Chief Medical Examiner could not determine the manner of death, it determined the cause of death to be a result of a "probable onset of cardiac dysrhythmia as a result of myxomatous degeneration of mitral valve in the setting of reported acute agitation requiring restraint."[39]  The autopsy also revealed that Decedent had a preexisting diseased heart valve and a borderline enlarged heart.[40]

---

[32] Am. Compl. ¶ 63-66 [#4].

[33] Am. Compl. ¶ 64-65 [#4].

[34] Am. Compl. ¶ 68-69 [#4].

[35] Am. Compl. ¶ 69 [#4].

[36] Am. Compl. ¶ 70 [#4].

[37] Am. Compl. ¶ 71-74 [#4].

[38] Am. Compl. ¶ 77-78 [#4].

[39] Am. Compl. ¶ 79-80 [#4].

[40] Am. Compl. ¶ 81 [#4].

B.      Procedural Background

Plaintiff originally filed this case on December 30, 2010.[41]  On May 11, 2011, Plaintiff filed

a First Amended Complaint and Jury Demand [#4].[42]  On July 11, 2011, Defendants

Commonwealth of Massachusetts, Suffolk County Sheriff's Department, Suffolk County Sheriff

Andrea Cabral, Melvin Reed, Daniel Brock, Michael Griffin, Dana Johnson, James Glavin, Keith

Storlazzi, Joseph Munger, Thomas Flynn, James Coppinger, Edward Sciaratta, and Michael

Carbonneau filed a Motion to Dismiss [#21].  Also on July 11, 2011, Defendants Prison Health

Services, Inc. and Barbara Jocelyn filed a Partial Motion to Dismiss [#24], which was

ALLOWED by this Court on September 22, 2011 [#49].  On July 25, 2011, Defendants Prison

Health Services, Inc. and Barbara Jocelyn filed a Motion for Referral to a Medical Malpractice

Tribunal [#27], which was ALLOWED by this Court on November 3, 2011 [#51].

Plaintiff brings seventy-eight counts,[43] four of which have been dismissed.[44]  The

remaining seventy-four counts allege federal constitutional violations under 42 U.S.C. § 1983;

state common law claims of wrongful death, negligence, and assault and battery; as well as state

statutory civil rights claims under M.G.L. c. 12 §§ 11H, I.  The federal claims will be addressed

first, followed by Plaintiff's state law claims.

---

[41] Compl. [#1].

[42] Am. Compl. [#4].

[43] Am. Compl. [#4].

[44] Order [#49], granting Defendants Prison Health Services, Inc. and Barbara Jocelyn's
Partial Motion to Dismiss [#24], dismissed Counts 71, 74, 75 and 78, alleging state and federal
civil rights claims against those two Defendants.

III.   Discussion

A.   Standard of Review

The standard for evaluating a motion to dismiss for failure to state a claim is clear.  While this court must accept all of Plaintiff's factual allegations as true, bare assertions and conclusions of law are not entitled to similar weight.[45]  "To state a claim, a complaint must contain factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."[46]  To survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief."[47]  There must be sufficient facts in the complaint to state a claim upon which relief can be granted as to each defendant named in the complaint.[48]

B.   Claims Against the Commonwealth of Massachusetts, the Suffolk County Sheriff's Department, Suffolk County Sheriff Andrea Cabral, and the Corrections Officers in Their Official Capacities

In Counts 1 through 15 of the Amended Complaint, Plaintiff alleges federal and state constitutional, statutory, and common law violations by the Commonwealth of Massachusetts (Counts 1-5), the Suffolk County Sheriff's Department (Counts 6-10), and Suffolk County Sheriff Andrea Cabral in her official capacity (Counts 11-15).  Plaintiff brings the same claims against the eleven named corrections officers in both their official and individual capacities (Counts 16-70).

---

[45] Special Situations Fund III, L.P. v. Am. Dental Partners, Inc., 775 F. Supp. 2d 227, 237 (D. Mass, 2011).

[46] Id. at 237.

[47] Rodrigues-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007).

[48] Ocasio-Hernandez v. Fortuno-Burset, ___ F.3d ___, 2011 WL 1228768, *13 (1st Cir. April 1, 2011).

The federal counts brought against the Commonwealth, the Sheriff's Department, and the corrections officers in their official capacities are barred by Eleventh Amendment sovereign immunity and thus are DISMISSED.

Eleventh Amendment sovereign immunity bars suit in federal court against unconsenting states.[49]  A state is only subject to suit in federal court if it waives sovereign immunity, which it must do with "the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction."[50]  In Massachusetts, for the Commonwealth "to be found to have waived sovereign immunity, state legislation must either be explicit on point, or waiver must be found by necessary implication from [the terms of the statute]."[51]  This stems from the belief that "[s]overeign immunity is too important of a right to be waived in any way but directly (if not explicitly) by the statute's terms . . . ."[52]

The application of sovereign immunity in the present case turns on whether Defendants waived their sovereign immunity in the 2009 legislation effectuating the assumption of the Suffolk County Sheriff's Department by the Commonwealth.  At the time that the events underlying the

---

[49] Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996) ("For over a century we have reaffirmed that federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.'") (quoting Hans v. Louisiana, 143 U.S. 1, 15 (1890)).

[50] Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 305 (1990) (alteration in original) (citation omitted) (internal quotation marks omitted).

[51] Max-Planck-Gesellschaft Zur Forderung Der Wissenchaftern E.V. v. Whitehead Inst. for Biomedical Research, __ F. Supp. 2d __, 2011 WL 487828, *12 (D. Mass. Feb. 7, 2011) (alteration in original) (citation omitted) (internal quotation marks omitted) (holding that Chapter 93A does not waive sovereign immunity despite permitting suit against a person, the definition of which includes "any other legal entity").

[52] Id.

Amended Complaint occurred, the Suffolk County Sheriff's Department was a municipal agency, but effective January 1, 2010, the Commonwealth of Massachusetts assumed control of the Sheriff's Department and all of its employees.[53]  The enabling legislation reads in relevant part:

> Notwithstanding any general or specific law to the contrary, all valid liabilities and debts of the office of a transferred sheriff, which are in force on the effective date of this act, shall be obligations of the Commonwealth as of that date, except as may be otherwise provided in this act.[54]

This court, in Gallo v. Essex County Sheriff's Department, examined similar enabling legislation that effectuated a prior transfer of county sheriff's departments to the Commonwealth.[55]  There, the court held that the language transferring the rights and obligations of the Essex County Sheriff's Department did not constitute an unambiguous waiver of sovereign immunity.[56]  In particular, the court made clear that, "the First Circuit has declined to find waiver where a statue could be interpreted as either waiving or preserving sovereign immunity."[57]  Although the court in Gallo was examining the viability of causes of action that accrued after the transfer, the waiver analysis is equally relevant here.  The Gallo court determined that there were competing interpretations of the enabling legislation regarding whether employees retained a right to bring

---

[53]Mass. St. 2009, c. 61 (effective January 1, 2010)(transferring Barnstable, Bristol, Dukes, Nantucket, Norfolk, Plymouth and Suffolk Sheriffs and their employees to the Commonwealth).

[54] Mass. St. 2009, c. 61, § 6.

[55] Gallo v. Essex County Sheriff's Dept., __ F. Supp. 2d __, 2011 WL 1155385, *6 (D. Mass. March 24, 2011)

[56] Id.

[57]Id. (citing Maysonet-Robles v. Cabrero, 323 F.3d 43, 51 (1st Cir. 2003).

suit in federal court for violations of the Fair Labor Standards Act.[58]  Because there were

competing reasonable interpretations of the enabling legislation, the court held that no

unambiguous waiver existed.[59]

      The language in Section 6 of the Act Transferring County Sheriffs to the Commonwealth

is, at the very least, ambiguous.  On its own, the language transferring "all valid liabilities and

debts" could be interpreted as requiring merely the fulfillment of all contractual obligations, and

not the satisfaction of any accrued causes of action.  Even more detrimental to Plaintiff's

argument, however, is the subsequent qualifying clause, only requiring fulfillment of the debts and

liabilities "which are in force on the effective date of this act."  The assertion that a transfer of

liabilities constitutes a waiver of sovereign immunity is tenuous at best. The qualification that they

be "in force" at the effectuation of the transfer defeats any claim that the Commonwealth waived

sovereign immunity for causes of action that had accrued prior to the act, but were not yet

adjudicated.  The events that led to Decedent's death occurred prior to the transfer, but Plaintiff

filed this suit nearly a year after the transfer took effect.  Plaintiff cannot point to any language

unambiguously supporting the waiver of sovereign immunity as to future potential claims – those

filed after the transfer took effect.  It is clear, therefore, that the Commonwealth did not waive

sovereign immunity in this case, and that Plaintiffs claims are barred.

---

[58] Id.

[59] Id. This Court in Gallo also underwent an analysis of whether the Essex County
Sheriff's Department was as an arm-of-the-state after the transfer took effect, and thus whether
sovereign immunity applied even after the transfer. Here, Plaintiff did not challenge that the
Suffolk County Sheriff's Department is immune from suit for causes of action accruing after
January 1, 2010, the date of the transfer.

C.      Federal Civil Rights Claims Against the Corrections Officers Acting in

Their Individual Capacities

Counts 16 through 70 are brought against the corrections officers both in their official and

individual capacities.  Although claims against the corrections officers acting in their official

capacity are barred by sovereign immunity, there is still the potential for § 1983 liability for the

officers acting in their individual capacities.

42 U.S.C. § 1983 creates a cause of action against individuals acting under color of state

law who violate rights of another secured under the Constitution or laws of the United States.[60]

The availability of relief for a plaintiff under § 1983 is limited by the operation of the doctrine of

qualified immunity, which "protects government officials from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights . . . ."[61]  The

relevant inquiry here, then, is whether the conduct of the individual corrections officers amounted

to a violation of Decedent's clearly established constitutional right.[62]  Plaintiff claims that

Defendants' actions violated Decedent's Fourth and Fourteenth Amendment rights by: (1) using

excessive force; (2) delaying administration of CPR after Decedent became unresponsive; (3)

---

[60] Erwin Chemerinsky, Federal Jurisdiction 464 (4th ed. 2003).

[61] Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)) (internal quotation marks omitted).

[62] Id. at 232.  In Pearson, the Supreme Court grappled with a previously established two-step approach to determine whether qualified immunity bars suit.  The court must decide: (1) whether the facts that a plaintiff has alleged (appropriate for a motion to dismiss) or shown (appropriate for summary judgment) made out a violation of a constitutional right and (2) whether, if a constitutional right has been violated, the right at issue was "clearly established" at the time of the defendant's alleged misconduct.  The case currently before the court only implicates the first step as the Fourth and Fourteenth Amendment rights at issue were clearly established when this cause of action accrued.

12

ignoring Decedent's statements that he could not breathe; and (4) failing to administer proper medical treatment.[63]

          1.      Traditional Use of Excessive Force Claims

Allegations of excessive force brought by inmates against corrections officers are traditionally adjudicated under the rubric of the Eighth Amendment.[64]  In Whitley v. Albers, the Supreme Court held that "the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified."[65]  In the present case, however, an Eighth Amendment violation was not plead, and the court is tasked with determining whether Plaintiff's claims under alternative theories of constitutional violations, namely the Fourth and Fourteenth Amendments, are sufficient to survive dismissal.[66]

---

    [63] The § 1983 claims asserting violations of Decedent's Fourth and Fourteenth Amendment rights by the individual Defendants begins at Am. Compl. ¶ 158 and continue through the end of the Complaint.

    [64]See Graham v. Connor, 490 U.S. 386, 395 n.10 (1989)(quoting Whitley v. Albers, 475 U.S. 312, 327 (1986)).

    [65] Whitley v. Albers, 475 U.S. 312, 327 (1986).

    [66] Nowhere in the 78 Count Amended Complaint [#4] does the Plaintiff pen the words "Eighth Amendment."  Instead, the Eighth Amendment makes its first appearance in this case in Defendants' Memorandum in Support of Their Motion to Dismiss [#22], and is then addressed in Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss [#30].  It is unclear whether a federal court, in the post-Twombley and Iqbal context, may consider plausible legal theories that are not raised in the complaint but which would be supported by the facts plead. Compare New Jersey Carpenters Pension & Annuity Funds v. Biogen IDEC Inc., 537 F.3d 35, 57 (1st Cir. 2008) (holding that a "district court would have acted well within its discretion in declining to permit advancement of [a] new theory" where a plaintiff raised a legal theory of relief for the first time in response to a motion to dismiss in the context of the heightened pleading standards required by the Private Securities Litigation Reform Act of 1995), with Williams v.

2.   Excessive Force and the Fourth Amendment

Plaintiff's Complaint alleges that Defendants violated Decedent's Fourth Amendment rights by using excessive and unnecessary force in the apprehension and restraint of Decedent.[67] Fourth Amendment protections, however, are appropriately invoked where arrestees and pretrial detainees are subject to excessive force.[68]   In Graham v. Connor, the Supreme Court expanded on its previous decision in Whitley, which had delineated the boundaries between the application of the Eighth and Fourteenth Amendment.   In an oft quoted footnote, the Court established a timeline, from prior to arrest through conviction, for the proper constitutional analysis of claims of excessive force.[69]   The footnote states that: (1) the Fourth Amendment protects free citizens in the process of arrest from the excessive use of force; (2) the Due Process Clause, possibly to the exclusion of the Fourth Amendment, protects pretrial detainees; and (3) the Eighth Amendment protects incarcerated convicts.[70]

Subsequent decisions interpreting Whitley and Graham have determined that the Fourth Amendment does not apply to claims for excessive use of force brought by inmates against

---

Willits, 853 F.2d 586, 588 (8th Cir. 1988) ("[T]he district court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory.").

[67] Am. Compl. ¶ 16, 21, 26, 31, 36, 41, 46, 51, 56, 61, 66 [#4].   Plaintiff also alleges that Defendants denied Decedent proper medical care.   The crux of the argument, however, is that excessive force was used, so we will examine the Fourth Amendment claim from that perspective.

[68] Graham v. Connor, 490 U.S. 386, 395 (1989) (finding that the Fourth Amendment, not the Fourteenth Amendment, is the proper rubric under which to analyze the use of force during an arrest).

[69] Id. at 395 n.10.

[70] Id.

14

corrections officers.[71]  An inmate does not retain a Fourth Amendment right to be free from the

excessive use of force after conviction.  Instead, the Eighth Amendment is the appropriate vehicle

for vindicating such claims, and Plaintiff failed to assert it.

        3.        Excessive Force and the Fourteenth Amendment

The due process protection afforded by the Fourteenth Amendment protects individuals

from the "arbitrary action of government."[72]  Only conduct that "shocks the conscience"

constitutes an arbitrary abuse of power so as to give rise to a violation of an individual's

substantive due process rights.[73]  In the context of allegations of excessive force brought by prison

inmates against corrections officers, the "shocks the conscience" standard for a Fourteenth

Amendment violation does not provide protection above and beyond the traditional Eighth

Amendment protection against the "unnecessary and wanton infliction of pain" formulation of

cruel and unusual punishment.[74]

While the validity of a Fourteenth Amendment claim in instances where an Eighth

Amendment claim would be more appropriate requires a similar analysis as was undertaken above

regarding the Fourth Amendment, the Due Process Clause of the Fourteenth Amendment at least

---

[71] See e.g., Cornwell v. Dahlberg, 963 F.2d 912, 915-16 (2d Cir. 1992) ("[W]e hold that . . . a claim asserted by a convicted prisoner is to be raised exclusively under the Eighth Amendment's cruel and unusual punishment clause . . . . [W]e have followed [the reasoning of Graham] to deny the Fourth Amendment claim of a convicted prisoner who alleged the use of excessive force by a prison guard . . . ."); see also Kinney v. Indiana Youth Ctr., 950 F.2d 462, 465 (7th Cir. 1991); Mills v. Smith, 656 F.2d 337(8th Cir. 1981).

[72] County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998) (quoting Wolff v. McDonnell, 418 U.S. 539, 558 (1974)).

[73] Id. (citing Rochin v. California, 342 U.S. 165, 172-73 (1952)).

[74] Whitley, 475 U.S. at 327.

provides a plausible entitlement to relief for Plaintiff's claims.  Although <u>Graham</u> held that the

Fourth Amendment provides the exclusive guide for analyzing claims arising from the arrest or

investigatory stop of a free citizen, the Court did not use the same exclusionary language in its

discussion of the relationship between the Eighth Amendment and the Due Process Clause of the

4th and 14th Amendment.[75]  The court stated: "Any protection that 'substantive due process'

affords convicted prisoners against excessive force is . . . at best redundant of that provided by the

Eighth Amendment."[76]  Later, the Court noted in <u>Lanier</u> that:

> <u>Graham</u> does not hold that all constitutional claims relating to
> physically abusive government conduct must arise under either the
> Fourth or Eighth Amendments; rather, <u>Graham</u> simply requires that if
> a constitutional claim is covered by a specific constitutional provision,
> such as the Fourth or Eighth Amendment, the claim must be analyzed
> under the standard appropriate to that specific provision, not under
> the rubric of substantive due process.[77]

The issue remains, then, whether we can examine a Due Process Clause claim under the rubric of

the Eighth Amendment where the Eighth Amendment was never plead.  While this issue may be

ripe for summary judgment, a determination is not prudent at this stage in the litigation.

Plaintiff has alleged sufficient factual material to alert Defendants as to the nature of the

Fourteenth Amendment claims against them, namely the excessive force and delay in

administering medical treatment.  Plaintiff has also stated a facially plausible legal claim pursuant

to the Fourteenth Amendment's substantive due process right to life.[78]  Whether a Fourteenth

---

[75] <u>Graham</u>, 490 U.S. at 394-95.

[76] <u>Graham</u>, 490 U.S. at 395 n. 10 (citing <u>Whitley</u>, 475 U.S. at 327).

[77] <u>United States v. Lanier</u>, 520 U.S. 259, 272 n. 7 (1997)

[78] <u>See Ocasio-Hernandez</u>, 2011 WL 1228768 at *12 (distilling the <u>Twombly</u> and <u>Iqbal</u>
principles into the conclusion that "an adequate complaint must give fair notice to the

16

Amendment claim will succeed as a veiled substitute for an Eighth Amendment violation is more appropriately determined at a later stage in litigation.

        4.    <u>Individual Defendants</u>

In light of the dismissal of Plaintiff's federal claims against Defendants in their official capacity in Section B, we now turn to the Fourteenth Amendment claims against Defendants in their individual capacities.  As noted above, there must be sufficient facts in the complaint to state a claim upon which relief can be granted as to each named defendant.[79]

Taking all facts alleged in the Amended Complaint as true, it appears that Defendants Johnson and Glavin were no longer participating in the transfer at the time Decedent first resisted and the officers took the first responsive measures by "double locking" Decedent's handcuffs.[80] Defendant Griffin, though a participant in the transfer after the "escort hold" was initiated, did not put Decedent in that compromised position and is not mentioned after the team reached the elevator in building 1.[81]  As such, the claims against Defendants Johnson, Glavin, and Griffin must be dismissed for failure to allege factual material that raises "a right to relief above the speculative level."[82]

Defendants Reed, Brock, Munger, Storlazzi, Flynn, Coppinger, Sciaratta, and

---

defendants and state a facially plausible legal claim."); <u>see</u> <u>also</u> <u>Evicci v. Baker</u>, 190 F.Supp.2d 233, 240 (D. Mass. 2002) ("The record establishes an adequate evidentiary basis to support a jury finding that [the prisoner] was beaten. If he was beaten, [the prisoner] has a valid due process claim.").

[79] <u>Ocasio-Hernandez</u>, 2011 WL 1228768 at *13.

[80] Am. Compl. ¶ 33-37 [#4].

[81] Am. Compl. ¶ 35-40 [#4].

[82] <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007).

Carbonneau, however,  each either applied physical force to Decedent or were present when Decedent was unresponsive and requiring medical attention.  Defendant Brock performed the initial "double lock" and "escort hold."[83]  Defendants Storlazzi and Brock applied the top ERB, Defendants Storlazzi and Sciaratta applied the lower ERB, and Defendant Carbonneau applied pressure to Decedent's shoulders and used knee and palm strikes to Decedent's torso.[84] Defendant Coppinger was present during the struggle that took place between the elevator on the fourth floor segregation unit and Decedent's new cell, and thus was present while Decedent was unresponsive and in need of medical attention.[85]  Defendant Munger, in his role as videographer, captured Decedent in an unresponsive state.[86]  It is alleged that Defendant Brock heard Decedent state that he could not breathe, then acknowledged once Decedent was in his cell that he was not responsive.[87]  Defendant Flynn also participated in the transfer after the ERBs were applied.[88] Defendant Reed ordered and supervised this procedure and made the call for medical attention.[89] The Motion to Dismiss, therefore, must be denied as to the civil rights claims brought against these defendants in their individual capacities because Plaintiff alleges sufficient facts as against each individual defendant to state a plausible claim for relief.

---

[83] Am. Compl. ¶ 36 [#4].

[84] Am. Compl. ¶ 47-50 [#4].

[85] Am. Compl. ¶ 43-61 [#4].

[86] Am. Compl. ¶ 55-56 [#4].

[87] Am. Compl. ¶ 51, 60 [#4].

[88] Am. Compl. ¶ 53 [#4].

[89] Am. Compl. ¶ 41-43, 61-62 [#4].

D.      Claims Under the Massachusetts Civil Rights Act

To establish a claim under the Massachusetts Civil Rights Act ("MCRA")[90], a plaintiff "must prove that (1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation, or coercion.'"[91]  The MCRA is intended to provide a remedy coextensive with that of § 1983.[92]  Violations of § 1983, however, are not per se violations of the MCRA; instead, the MCRA is "explicitly limited" to situations "where derogation of secured rights occurs by threats, intimidation or coercion" involving specific threat of harm.[93]  "[A] direct deprivation of rights, even if unlawful, is not coercive because it is not an attempt to force someone to do something the person is not lawfully required to do."[94]

Plaintiff's MCRA claims against the Commonwealth and its agencies (Counts 4, 9, and 14), as well as against the individual officers in their official capacities, fail on the threshold

_____

[90] M.G.L. c. 12, § 11H (2006).

[91] Bally v. Northeastern University, 532 N.E.2d 49, 51-52 (Mass. 1989) (quoting M.G.L. c. 12, § 11H).

[92] Batchelder v. Allied Stores Corp., 473 N.E.2d 1128, 1131 (Mass. 1985). The only difference is that the remedy provided by the MCRA is not restricted to state action, while § 1983 is limited to state action.  See Williams v. O'Brien, 936 N.E.2d 1, 4 (Mass. App. Ct. 2010) ("It is well established that the MCRA incorporates the standard of immunity for public officials developed under 42 U.S.C. § 1983, and accordingly public officials are not liable under the [MCRA] for their discretionary acts, unless they have violated a right under Federal or State constitutional or statutory law that was clearly established at the time.") (alteration in original) (internal quotation marks omitted).

[93] Bally, 532 N.E.2d at 52.

[94] Freeman v. Planning Bd. of West Boylston, 646 N.E.2d 139, 149 (Mass. 1995).

ground that the Commonwealth and its agencies cannot be sued under the MCRA.  Although the

MCRA authorizes suit against "persons" acting under the color of law for the violation of

constitutional or statutory rights, it is well settled that the Commonwealth and its agencies are not

persons within the meaning of the MCRA.[95]

Plaintiff's claims against Defendants in their individual capacity also fail.  While Plaintiff

fulfills her burden of pleading a constitutional violation sufficient to support a § 1983 claim as to

some Defendants, Plaintiff fails to fulfill the MCRA pleading requirement of alleging that

Defendants threatened, intimidated, or coerced Decedent to prevent him from exercising a

constitutional right.  In each count alleging a MCRA claim, Plaintiff relies on the same language

used in her § 1983 claims, namely that Defendants violated Decedent's constitutional rights by

using "excessive force in effecting their apprehension and restraint" of Decedent, "waiting nearly

10 full minutes from the time he is not responding to initiate CPR" to him, "ignoring [Decedent]

when he repeatedly told the Officers he could not breathe," and "failing to administer proper

medical treatment."[96]  While this language arguably alleges constitutional violations, it does not

allege the type of threatening or coercive conduct contemplated by the MCRA, and thus such

claims cannot be sustained.

E.      Common Law Negligence and Wrongful Death

As some federal claims discussed above survive dismissal, this Court maintains jurisdiction

---

[95] Williams, 936 N.E.2d at 4 ("The judge correctly dismissed this claim against the Commonwealth . . . because the Commonwealth, including its agencies, is not a 'person' subject to suit pursuant to G.L. c. 12, § 11H.")

[96] See, e.g., Am. Compl. ¶ 99-102 [#4].

over pendent state law claims.[97]   Plaintiff brings state common law negligence and wrongful death

claims against each defendant.[98]   The Massachusetts Tort Claims Act ("MTCA"), however,

provides the exclusive remedy for "personal injury or death caused by the negligent or wrongful

act or omission of any public employee while acting within the scope of his office or employment .

. . ."[99]   The MTCA does not provide any new theories of negligence liability.  Instead, it "provides

that tort actions brought against governmental entities are governed by the same theories of

liability that apply to actions involving private parties."[100]   As such, the MTCA waives sovereign

immunity, granting subject matter jurisdiction to Massachusetts state courts exclusively over

"public employers," which by definition includes the Commonwealth and any county.[101]

        As a preliminary matter, the MTCA categorically protects public employees acting within

the scope of their employment from liability for "personal injury or death" caused by their

individual negligence.[102]   The MTCA's exclusion from suit therefore precludes the negligence and

wrongful death claims brought against Defendant Cabral and the individual corrections officers.

        The Commonwealth and the Suffolk County Sheriff's Department are also immune from

suit because Plaintiff failed to satisfy the MTCA's threshold presentment requirement. Under the

---

[97] See 28 U.S.C. § 1367 (2006).

[98] Counts 2, 3, 7, 8, 12, 13, 17, 18, 22, 23, 27, 28, 32, 33, 37, 38, 42, 43, 47, 48, 52, 53, 57, 58, 62, 63, 67, and 68.

[99] M.G.L. c. 258 § 2 (2006).

[100] Vining v. Commonwealth, 828 N.E.2d 576, 579 (Mass. App. Ct. 2005).

[101]  M.G.L. c. 258 at §§ 1 and 2; see Vining, 828 N.E.2d at 579.

[102] Id. at § 2 ("[N]o such public employee or the estate of such public employee shall be liable for any injury or loss of property or personal injury or death caused by his negligent or wrongful act or omission while acting within the scope of his office or employment . . . .").

21

MTCA, "[a] civil action shall not be instituted . . . unless the claimant shall have first presented his claim in writing to the executive officer of such public employer . . . ."[103]  Where the public employer is a county, the "executive officer" is defined as the "county commissioner."[104]  Prior to 2010, the Mayor of Boston and the City Council members had "the powers and perform[ed] the duties of county commissioner[]."[105]  Presentment must be made within two years of when the cause of action arose,[106] and Massachusetts courts have consistently held that "presentment must be made in strict compliance with the statute."[107]

Here, presentment was not properly made.  Plaintiff sent her presentment letter to the Massachusetts Attorney General, with copies sent to Suffolk County Sheriff Andrea Cabral and Boston City Mayor Thomas Menino.[108]  Plaintiff failed, however, to fulfill her presentment requirements by alerting the members of the Boston City Counsel pursuant to M.G.L. c. 34 § 4.  Plaintiff's negligence and wrongful death claims against the Commonwealth and the Suffolk County Sheriff's Department are therefore barred and must be dismissed.

F.       Common Law Assault and Battery Claims

---

[103] Id. at § 4.

[104] Id. at § 1.

[105] M.G.L. c. 34 § 4 (2006).

[106] M.G.L. c. 258 § 4.

[107] Garcia v. Essex County Sheriff's Dept., 837 N.E.2d 284, 287 (Mass. App. Ct. 2005) (internal quotation marks omitted) (citations omitted); see also Gilmore v. Commonwealth, 632 N.E.2d 838, 840 (Mass. 1994); Baptiste v. Sheriff of Bristol County, 617 N.E.2d 641, 645 (Mass. App. Ct. 1993); Weaver v. Commonwealth, 438 N.E.2d 831, 834 (Mass. 1982).

[108] Exhibit 1 to Plaintiff's Memorandum in Opposition to the Suffolk Defendant's Motion to Dismiss [#30].

In Massachusetts, assault and battery may be established under either of two theories: (1) "the intentional and unjustified use of force upon the person of another, however slight"; or (2) "the intentional commission of a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another."[109]   A corrections officer can commit assault and battery by employing excessive force to subdue a prisoner.[110]

Defendant's <u>Motion to Dismiss</u> the assault and battery claims against Defendants Brock, Griffin, Flynn, Sciaratta, Storlazzi, and Carbonneau fail because Plaintiff properly alleged that their contact with Decedent amounted to excessive force.  Defendants' <u>Motion to Dismiss</u> the assault and battery counts against Defendants Johnson, Glavin, Coppinger, and Munger, however, are allowed because they are not alleged to have had any physical contact with Decedent nor to have intentionally induced or encouraged the alleged excessive force.  As to Defendant Reed, without embarking on a review of supervisor liability, Plaintiff's <u>Motion to Dismiss</u> the assault and battery claim will be denied as it is properly alleged that he instructed the use of excessive force, which provides a potential grounds for liability.[111]

IV.   <u>Conclusion</u>

For the foregoing reasons, Defendants' <u>Motion to Dismiss</u> [#21] is ALLOWED as to all counts against Defendants Commonwealth of Massachusetts, the Suffolk County Sheriff's

---

[109] <u>Thore v. Howe</u>, 466 F.3d 173, 175-76 (1st Cir. 2006).

[110] <u>See</u> <u>Evicci v. Baker</u>, 190 F.Supp.2d 233, 239-40 (D. Mass. 2002) (holding that summary judgment was inappropriate because the plaintiff alleged a "classic battery" where corrections officers "began punching Plaintiff's back, causing pain and injury that lasted for weeks").

[111] <u>See</u> <u>Alberts v. Devine</u>, 479 N.E.2d 113, 121 (Mass. 1985) ("a plaintiff may hold liable one who intentionally induces another to commit any tortious act that results in damage to the plaintiff").

Department, Suffolk County Sheriff Andrea Cabral, Michael Griffin, James Glavin, Dana Johnson, and each of the remaining corrections officers in their official capacity.

As to the Federal Civil Rights Fourteenth Amendment claims against the corrections officers in their individual capacity, the <u>Motion to Dismiss</u> [#21] is DENIED as to Defendants Melvin Reed, Daniel Brock, Keith Storlazzi, Joseph Munger, Thomas Flynn, James Coppinger, Edward Sciaratta, and Michael Carbonneau, and is ALLOWED as to Defendants Dana Johnson, James Glavin, and Michael Griffin.

The <u>Motion to Dismiss</u> [#21] is ALLOWED as to Plaintiff's wrongful death and negligence claims.  It is DENIED as to the assault and battery claims against Defendants Melvin Reed, Daniel Brock, Keith Storlazzi, Thomas Flynn, Edward Sciaratta, and Michael Carbonneau, and ALLOWED as to the assault and battery claims against Defendants Joseph Munger and James Coppinger.

AN ORDER HAS BEEN ISSUED.


     <u>     /s/ Joseph L. Tauro     </u>
                United States District Judge